UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SURAWAT KUMSANG (A-Number: 039-063-819),

Petitioner,

v.

CHRISTOPHER CHESTNUT,

Respondent.

Case No. 1:26-cv-4591-TLN-JDP

FINDINGS AND RECOMMENDATIONS

Petitioner Surawat Kumsang, a citizen of Thailand, was a legal permanent United States resident after his April 9, 1986 admission. ICE detained him on November 21, 2025, upon his release from detention associated with a 2017 state criminal conviction. Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2241. For the following reasons, I recommend that the petition be granted and that petitioner be provided a bond hearing.

**Background**

Petitioner was admitted to the United States as a legal permanent resident ("LPR") on April 9, 1986. ECF No. 8-1 at 2. Petitioner has lived in the United States continuously for over 40 years. ECF No. 1 at 2. Petitioner has been arrested multiple times in the intervening decades. ECF No. 8-1 at 3-4.

Most pertinent to this matter, in 2017, petitioner was convicted in Nevada of one count of domestic violence with strangulation and one count of battery with intent to commit a crime. ECF No. 8-3 at 1-2; ECF No. 8-2 at 1. Petitioner received an aggregate sentence of a minimum of 60 months and a maximum of 180 months. ECF No. 8-3 at 2.

When Nevada state authorities released petitioner from prison on November 21, 2025, ICE took him into immigration custody. ECF No. 8-1 at 2. Petitioner has been in ICE custody since that date without any opportunity for a bond hearing. ECF No. 11 at 5. On January 13, 2026, an immigration judge ordered petitioner removed from the United States to Thailand. ECF No. 8-4 at 3. Petitioner timely appealed that order to the Board of Immigration Appeals ("BIA"), and that appeal remains pending; accordingly, the removal order is not administratively final. *See* ECF No. 8-5; ECF No. 8 at 2.

On June 19, 2026, while petitioner's BIA appeal was pending, immigration authorities identified petitioner as a class member in *Franco-Gonzalez v. Holder*, No. 10-cv-2211-DMB-DTB (C.D. Cal. Apr. 23, 2013.).[1] ECF No. 8 at 3. The Department of Homeland Security ("DHS") filed a motion to have the BIA remand petitioner's case to immigration court for a judicial competency inquiry. ECF No. 8 at 3. Petitioner's counsel noted that by August 5, 2026, there was no record that the judicial competency inquiry had been conducted. ECF No. 11 at 4. Petitioner's EOIR case information shows that there are no hearings set in this case. *See* https://acis.eoir.justice.gov/en/caseInformation (last checked Aug. 26, 2026).

**Procedural History**

On June 15, 2026, petitioner filed a pro se petition for writ of habeas corpus, a motion to

[1] In *Franco-Gonzalez*, the court certified a class consisting of "individuals who are . . . in DHS custody for removal proceedings in California . . . who have been identified by or to medical personnel, DHS, or an Immigration Judge, as having a serious mental disorder or defect that may render them incompetent to represent themselves in detention or removal proceedings, and who presently lack counsel in their detention or removal proceedings." *Franco-Gonzalez*, 2013 WL 3674492, at *2. The court granted a permanent injunction requiring that a qualified representative be provided to class members who are incompetent to represent themselves. *Id.* at *20. The court also granted a permanent injunction that class members who "have been detained for a prolonged period of time greater than 180 days" be provided a custody redetermination hearing." *Id.* On October 29, 2014, the court issued a detailed order implementing the permanent injunction. *See Franco-Gonzalez v. Holder*, 2014 WL 5475097 (C.D. Cal. Oct. 29, 2014).

appoint counsel, and a motion to proceed in forma pauperis. ECF Nos. 1, 2, & 3. The court referred this matter to me. ECF No. 6. I granted *in forma pauperis* status and ordered briefing. ECF No. 7. Respondent filed its answer on June 30, 2026. ECF No. 8. I granted petitioner's motion to appoint counsel on July 28, 2026, and provided appointed counsel an opportunity to file an amended petition and/or a reply. ECF No. 9. Appointed counsel filed a reply. ECF No. 11.

## Legal Standard

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## Analysis

Petitioner claims that his detention without a bond hearing violates due process. ECF No. 1 at 3, 13; ECF No. 11 at 5. Respondent counters that petitioner's detention is mandatory under 8 U.S.C. § 1226(c)(1)(B) based on his conviction of an aggravated felony. ECF No. 8 at 2. Petitioner, through counsel, does not dispute this statutory ground for his detention. *See* ECF No. 11 at 5. However, as petitioner points out, mandatory detention under section 1226(c) has constitutional limits. *Id.*

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). I consider each in turn.

The parties agree that petitioner was admitted to the United States in April 1986 as an 18-year-old immigrant and was granted lawful permanent resident ("LPR") status. ECF No. 8-1 at 1, 4; ECF No. 11 at 3. It is undisputed that petitioner has lived in the United States as an LPR for approximately forty years. Courts in this Circuit, including this one, have held that an LPR has a protected liberty interest in not being detained by ICE. *See Burton v. Larose*, No. 3:26-cv-2627-JES-BJW, 2026 WL 1256875, at *2-3 (S.D. Cal. May 7, 2026); *B.R. v. Warden*, No. 1:26-cv-0810-TLN-CSK, 2026 WL 1091489, at *2 (E.D. Cal. Apr. 22, 2026); *Amezcua v. Noem*, No. 5:26-cv-1070-SRM-AGR, 2026 WL 1048212, at *6 (C.D. Cal. Mar. 25, 2026); *Galvan Maldonado v. Andrews*, No. 1:26-cv-1451-DJC-JDP, 2026 WL 1864622 (E.D. Cal. June 29, 2026).

Courts have come to these conclusions based on the breadth of case law finding that LPRs have protected liberty interests in maintaining ties with their community and remaining free from governmental restraint. *See Amezcua*, 2026 WL 1048212, at *6 (collecting cases). For example, the Supreme Court has held that LPR status "carries several important privileges: he may remain in the United States indefinitely; he is free to work in this country; he may return to this country after a temporary absence abroad; and he has the privilege of establishing a permanent residence in the United States." *Saxbe v. Bustos*, 419 U.S. 65, 72 (1974). Notably, LPRs "do not lose their due process protections and liberty interest merely because they are subject to removal." *Amezcua*, 2026 WL 1048212. On the contrary, LPRs are "lawfully present in the United States until a final deportation or removal order is entered." *Kyong Ho Shin v. Holder*, 607 F.3d 1213, 1217 (9th Cir. 2010). There is no final removal order in petitioner's case.

I agree with other courts that have addressed this issue and find that petitioner has a protected liberty interest that accrued over his approximately forty years of legal permanent residency in the United States. Respondent does not argue to the contrary. *See* ECF No. 8.

Once a court has found that a noncitizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the noncitizen before depriving him of that liberty interest. This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993

(9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his freedom. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner has a private interest in his continued release that developed over the four decades since he was admitted to the United States as an LPR. *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Turning to the second *Mathews* factor, the risk of erroneous deprivation without a bond hearing is high. Prior to giving petitioner permission to live and work in the United States as an LPR, respondent determined that he presented neither a danger to the community nor a risk of flight. Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's detention was not pursuant to a valid state interest. *See Omer G.G. v. Kaiser*, No. 1:25-cv-1471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

"Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-0801, 2025 WL

1918679, at *7 (E.D. Cal. July 11, 2025)). Respondent offers no evidence or argument indicating that any procedural safeguards have been employed following petitioner's detention; more generally, it gives the court no reason to believe that any efforts have been made to prevent erroneous deprivation of petitioner's liberty. *See id*. On the contrary, the fact that the government maintains that petitioner is subject to mandatory detention indicates that it has not made sufficient efforts to prevent an erroneous deprivation of his liberty.

This lack of bond hearing is especially concerning as the government identified petitioner as a class member in *Franco-Gonzalez*, which requires that the immigration court provide petitioner a custody redetermination hearing if he is held for more than 180 days.[2] *See Franco-Gonzalez*, 2013 WL 3674492, at *10 (injunction order). Petitioner has been held for approximately ten months without any bond hearing. Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without . . . a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted). "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). Respondent has not provided any information about the additional burden it would bear as a result of being required to provide a bond hearing. *See* ECF No. 8. In fact, respondent notes that immigration judges are "well suited to assess eligibility for release" in this circumstance. *Id.* at 9.

---

[2] The implementation order also details the procedure that the immigration court and DHS must follow once a noncitizen is identified as a class member. *Franco-Gonzalez*, 2014 WL 5475097. Once BIA notified the immigration judge in June 2026 that petitioner is a member of the class, the immigration judge was required to convene a judicial competency inquiry within 21 days. *Id.* at *7. There is no indication that this has occurred. If petitioner is found incompetent, he will be provided a qualified representative to represent him in his immigration proceedings. *See Franco-Gonzalez,* 2011 WL 11705815, at *16; *Franco-Gonzalez*, 2013 WL 8115423, at *1-2; *see also Lara v. Hernandez*, No. 26-cv-0747-TSZ, 2026 WL 1758643, at *2 (W.D. Wash. June 18, 2026).

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's detention without a bond hearing violates his due process rights. Given this finding, I must determine the appropriate remedy. Petitioner seeks a bond hearing where the government bears the burden of proof. ECF No. 11 at 14. Respondent argues that if the court orders a bond hearing, that petitioner should bear the burden of proof. *See* ECF No. 8 at 9.

To satisfy due process, "the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). In some circumstances, however, the Court has held that a post-deprivation hearing satisfies due process, such as where there is "the necessity of quick action by the State or the impracticality of providing any predeprivation process." *Id*. at 128 (cleaned up). It is undisputed that ICE re-detained petitioner upon his release from state prison for serious crimes that occurred in 2017. *See* ECF No. 8-1 at 3-4. Given that petitioner is a *Franco-Gonzalez* class member, I recommend that the court order a bond hearing where the government bears the burden of proof to show that petitioner is a danger or flight risk by clear and convincing evidence. *See Franco-Gonzalez*, 2011 WL 11705815, at *13 (placing the burden of proof on the government to justify continued detention of class members by clear and convincing evidence); *see also Lara*, 2026 WL 1758643, at *2 (ordering the government to release the petitioner where the immigration court's bond hearing failed to comply with *Franco-Gonzalez*).

**Conclusion**

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Within seven days of this order, petitioner (A-Number: 039-063-819) shall be provided a bond hearing before a neutral adjudicator. Within 24 hours of the filing of the court's order, respondents shall personally serve petitioner with the order and file proof of such service on the docket. At this bond hearing, petitioner shall be provided a qualified representative under *Franco-Gonzalez v. Holder*, No. 10-cv-2211 (N.D. Cal.), unless the immigration judge has held a judicial competency inquiry and determined that petitioner is competent. At this hearing, the

government shall bear the burden of establishing, by clear and convincing evidence, that petitioner poses a danger to the community or a risk of flight, and petitioner shall be allowed to have counsel present.

3. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within three days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within three days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: September 2, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE